# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LARRY PAYNE, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:17-cv-01410 |
| | ) CHIEF JUDGE CRENSHAW |
| KEVIN GENOVESE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Larry Payne, who appears in this action *pro se*, brings claims arising out of his incarceration at the Turney Center Industrial Complex[1] against Turney Center Warden Kevin Genovese, Warden of Treatment Stacy Oakes, Acting Warden of Security Jason Clendenion, and Classification Counselor Rita Edwards (collectively "Defendants"). Payne alleges that these Defendants were deliberately indifferent to his serious medical needs and retaliated against him for grievances he lodged regarding the deficient treatment he did receive. (See Doc. No. 55.) The Defendants move to dismiss a certain portion of Payne's claims against them. (See Doc. Nos. 56, 57.) Payne filed an untimely response in opposition (Doc. No. 91), to which the Defendants have replied (Doc. No. 93). For the following reasons, Defendants' Motion to Dismiss (Doc. No. 56) will be granted in part and denied in part.

---

[1] Payne is now incarcerated at the Whiteville Correctional Facility in Whiteville, Tennessee.

## I. Relevant Background

### A. Allegations of the Amended Complaint (Doc. No. 55)

Payne filed this action under 42 U.S.C. § 1983 on October 27, 2017 (Doc. No. 1) and filed an Amended Complaint with the Court's leave on August 13, 2018 (Doc. No. 55).[2] In the Amended Complaint, Payne alleges that he suffers from moderate deformities in both feet for which he requested medical treatment at the Turney Center from at least January 2016 until he was transferred out of that facility in February 2018. (Doc. No. 55 at 7-10.) Payne states that, in October 2016, Dr. Alicia Bigham authorized the purchase of special shoes to address Payne's condition. (Id. at 8.) Payne then underwent surgery on both feet in January 2017, after which he was restricted to a wheelchair for several months. (Id.) On March 6, 2017, Dr. Bigham renewed her authorization for the prescribed shoes and forwarded that prescription to Warden Genovese for approval. (Id.) Dr. Bigham also submitted a transfer order for Payne to be moved to a flat-land facility. (Id.) Payne alleges that Genovese denied the shoe purchase in April 2017, stating "he don't care what Dr. Bigham's order is or if Payne meets the criteria, he runs Turney Center." (Id. at 9.) Regarding his transfer to a flat-land facility, Payne states that, although Oakes and Edwards both indicated that he could be transferred on Dr. Bigham's order, they did not effectuate that transfer. (Id.) On August 10, 2017, Payne filed a grievance against Oakes and Edwards "for interfering with Dr. Bigham's order to transfer [him] to a flat land prison." (Id.) Payne filed a second grievance for interfering with Dr. Bigham's order on August 15, 2017, this time against Oakes and Clendenion. (Id.)

---

[2] The Magistrate Judge denied Payne's motion to file a Second Amended Complaint on grounds that the proposed amended pleading was substantively identical to the Amended Complaint that is the subject of the Defendants' Motion to Dismiss. (See Doc. No. 96.) The Amended Complaint therefore remains the operative pleading in this action and the Defendants' instant Motion to Dismiss remains ripe for decision.

On September 21, 2017, Clendenion came to Payne's cell and told him to pack his things because he was being permanently transferred to the High Security Annex. (Id. at 9-10.) Clendenion said that he was "tired of hearing about you filing grievances and if you keep that up I will make sure you rot in [the High Security Annex] and you will not be transferred to no prison, I do not care what the doctors say . . . ." (Id.) Clendenion also told Payne that he was going to house all of the black inmates, including Payne, in the High Security Annex. (Id.) On September 22, 2017, Payne was told by the Turney Center Grievance Chairperson that he would be given a disciplinary charge for abuse of the grievance procedure if he filed additional grievances. (Id. at 10.) On September 26, 2017, Oakes removed all of Payne's property from his cell. (Id.) Oakes told Payne he would not be transferred to a flat-land facility if he kept filing grievances. (Id.)

Payne was transferred to the Lois Deberry Special Needs Facility in early October 2017 for treatment by podiatrist Dr. Paul Somers. (Id.) Dr. Somers told Payne that Genovese had denied Dr. Bigham's initial order for special shoes; Dr. Somers then placed his own order for the shoes with Genovese. (Id.) When Payne returned to the Turney Center, Clendenion again transferred him to the High Security Annex. (Id.) Payne filed a Title VI grievance alleging race discrimination against Clendenion on October 10, 2017, and filed a grievance against Oakes, Clendenion, and Edwards on October 15, 2017, for interfering with the flat-land facility transfer order. (Id.)

Payne then initiated this action on October 27, 2017. (Id.; see also Doc. No. 1.) In January 2018, he was fitted for custom shoes and recommended for physical therapy. (Doc. No. 55 at 10.) Payne was transferred to the Whiteville Correctional Facility, which is a flat-land facility, on February 7, 2018. (Id.) He received his custom shoes in March 2018. (Id.)

Five months later, the Defendants filed the instant motion to dismiss certain claims from the Amended Complaint. (See Doc. Nos. 56, 57.) Payne did not respond in opposition to the

Defendants' motion until January 31, 2019, more than five months later. (Doc. Nos. 91, 92.) Moreover, Payne did not ask for the Court's leave to file an untimely response.

## II.     Legal Standard

In deciding a motion made under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Finally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III.    Analysis

The Defendants' Motion to Dismiss is limited in scope. (See Doc. Nos. 56, 57.) The Defendants seek, first, to dismiss Payne's claims for monetary damages against them in their

4

official capacities on grounds of Eleventh Amendment immunity. (Doc. No. 57 at 3-4.) Second, the Defendants argue that Payne has not pleaded sufficient factual allegations to support: (1) his claim that Genovese failed to follow the directive that Payne undergo physical therapy; (2) his claim that Oakes retaliated against him for filing grievances by placing him in the High Security Annex; and (3) his claim that Clendenion was deliberately indifferent to his medical needs by failing to follow Dr. Bigham's directive that he be transferred to a flat-land facility. (Id. at 4-6.)

### A. Timeliness of Payne's Response

As a threshold matter, the Court finds that Payne did not file a timely response in opposition to the Defendants' motion. Under this Court's Local Rule 7.01(a)(3), "any party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion . . . ." M.D. Tenn. Rule 7.01(a)(3) (response). If no timely response is filed, the motion is considered unopposed. Id.

Payne did not oppose the Defendants' motion to dismiss until five months after it was filed—well beyond the deadline set by this Court's rules. However, the Court notes that Payne did file a "Notice of Second Amended Complaint" within the prescribed timeframe, in which he stated that the filing was intended "to correct the legal claims against the . . . Defendants." (Doc. No. 60 at 1.) Although that notice was procedurally deficient, and Payne did not file a complete motion to amend until sometime thereafter (Doc. No. 96), the Court takes Payne's *pro se* status into account and will nonetheless consider the merits of the Defendants' motion and Payne's untimely response.

### B. Claims for Monetary Damages Against Defendants in Their Official Capacities

In his Amended Complaint, Payne states that he is suing Genovese, Oakes, Clendenion, and Edwards in their official and individual capacities. (Doc. No. 55 at 11.) As relief for his claims,

5

Payne seeks, in part, "compensatory damages in the amount of $100,000 against all defendants listed in this complaint for physical pain, suffering, emotional distress, humiliation, embarrassment and mental distress" and "punitive damages in the amount of $25,000 against each defendant listed in this complaint for their involvement of callous indifference to plaintiff Larry Payne's rights." (Id. at 12.) The Defendants argue that Payne's claims for monetary damages against them in their official capacities are barred by Eleventh Amendment immunity. (Doc. No. 57 at 3-4.)

Unless its protections are explicitly waived, the Eleventh Amendment bars claims for damages against states, as well as claims for damages against state employees in their official capacities. Quern v. Jordan, 440 U.S. 332, 337 (1979) ("[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). This is because a claim brought against a state employee in his official capacity is, in all material respects, a suit against the state itself. Cady v. Arenac Cty., 574 F.3d 334, 342 (6th Cir. 2009) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The State of Tennessee has not waived its Eleventh Amendment immunity to claims for money damages brought under 42 U.S.C. § 1983. See Berndt v. State of Tenn., 796 F.2d 879, 881 (6th Cir. 1986) (holding that a *pro se* litigant's § 1983 claim was properly dismissed because "[t]he State of Tennessee has not consented to any such suit expressly or by implication."). Accordingly, Payne's claims for monetary damages against the Defendants in their official capacities are barred and must be dismissed.

### C. Specific Claims Against Defendants Genovese, Oakes, and Clendenion

The Defendants also argue that Payne has not sufficiently alleged particular aspects of his claims against Genovese, Oakes, and Clendenion. The Defendants first challenge Payne's claim that Genovese was deliberately indifferent to his serious medical needs "by failing to follow all

directives from Foot Specialist Podiatrist Paul Somers, M.D.; Foot Specialist at Hanger Clinic in Nashville and Dr. Alicia Bigham, M.D., [including] to allow the plaintiff . . . to undergo physical therapy." (Doc. No. 57 at 5.) The Defendants argue that Payne has not alleged any facts showing that Genovese had any role in deciding whether Payne received physical therapy. (Id.)

Payne alleges that, "[i]n January 2018, [he] was transported to [the] Hanger Clinic in Nashville" where a specialist "recommended that [he] undergo physical therapy because [he] has weak legs and ankles." (Doc. No. 55 at 10.) Payne alleges that, while he was housed at the Turney Center, "they refused to follow the directives from . . . the Foot Specialist at Hanger Clinic in Nashville," including the directive "for [Payne] to undergo physical therapy." (Id.) In contrast to his allegations about receiving special shoes and being transferred to a flat-land facility, Payne does not allege that Genovese had notice of the specialist's physical therapy recommendation, nor does he identify any action Genovese took to prevent him from receiving physical therapy. In the absence of such allegations, Payne has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" regarding physical therapy. Iqbal, 556 U.S. at 678. Accordingly, that particular aspect of his claim against Genovese will be dismissed. All other aspects of Payne's claims against Genovese will proceed.

In a similarly narrow argument, Defendants ask the Court to dismiss Payne's claim that Oakes retaliated against him by placing him in segregation (the High Security Annex) unlawfully in violation of his rights under the First Amendment. (Doc. No. 55 at 11.) The Defendants are correct that Payne does not allege that Oakes had any role in transferring him to the High Security Annex. Any claim Payne makes that Oakes retaliated against him by means of that transfer is therefore dismissed. Payne does allege in some detail, however, that Oakes "had all his property taken" and told Payne that, "[i]f you keep on filing these grievances, you will not get transferred

7

to a flat land prison . . . ." (Id. at 10.) Those allegations do state a claim that Oakes retaliated against Payne for filing grievances by having his property taken. Therefore, to that extent, the retaliation claim will proceed.

Finally, the Defendants argue that Payne has not adequately pleaded that Clendenion showed deliberate indifference to his medical needs by not transferring Payne to a flat-land prison. (Doc. No. 57 at 6.) The Defendants acknowledge that Payne has sufficiently alleged that: (1) Oakes and Edwards were involved in the discussion of a transfer in June 2017; (2) Oakes stated he would not allow [Payne] to be transferred in September 2017; and (3) Payne filed "several grievances related to his lack of transfer against Defendant Clendenion." (Id.) Defendants argue, however, that Payne "does not reference any involvement by Defendant Clendenion in [his] alleged delay in transfer throughout his Amended Complaint." (Id.)

This argument appears to neglect Payne's allegation that Clendenion came to his cell on September 21, 2017 and stated, "Pack your [things], you will be housed in H.S.A. (High Security Annex) permanently, I am tired of hearing about you filing grievances and if you keep that up I will make sure you rot in H.S.A. and you will not be transferred to no prison, I do not care what the doctors say . . . ." (Doc. No. 55 at 10.) Payne states that Clendenion then escorted him to the High Security Annex and that these events were repeated when he returned to the Turney Center after receiving medical treatment in October 2017. (Id.) Those allegations—which substantially mirror Payne's allegation regarding Oakes's September 2017 statement that Defendants do not challenge—sufficiently state a deliberate indifference claim against Clendenion for preventing Payne's transfer to a flat-land facility. The Defendants' request to dismiss this aspect of Payne's claim will therefore be denied.

## IV. Conclusion

For these reasons, Defendants' Motion to Dismiss (Doc. No. 56) is **GRANTED IN PART** as to Payne's claims (1) for monetary damages against the Defendants in their official capacities; (2) that Genovese was deliberately indifferent to his medical needs by failing to provide him with physical therapy; and (3) that Oakes retaliated against him by transferring him to the High Security Annex in retaliation for having filed grievances. The Defendants' motion is **DENIED IN PART** as to Payne's claim that Clendenion was deliberately indifferent to Payne's medical needs by failing to transfer him to a flat-land facility. That claim and the other unchallenged claims made in Payne's Amended Complaint will proceed. This case is **RETURNED** to the Magistrate Judge for further case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE